

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re:<br><br>SUBPOENA DUCES TECUM AND AD TESTIFICANDUM PURSUANT TO FED. R. BANKR. P. 2004,<br><br>Regarding the Chapter 13 cases<br><br>PEDRO J. LUNA & TANISHA M. LUNA;<br><br>JOHN SHINE;<br><br>VALENTINE T. SOLTYS & CHRISTINA E. SOLTYS;<br><br>HECTOR LUIS RAMOS & CHRISTINA RAMIREZ-RAMOS;<br><br>WILLIAM F. KELLER & ANN KELLER;<br><br>LENORE R. FRANCIS,<br><br>Debtor(s). | Misc. Nos. 1:10-mp-00101-MT; 1:10-mp-00102-MT; 1:10-mp-00103-MT; 1:10-mp-00104-MT; 1:10-mp-00105-MT; 1:10-mp-00106-MT<br><br>[Pending in the United States Bankruptcy Court for the District of New Jersey, Case Nos. 10-38190, 10-30862, 10-40559, 10-31341, 10-40109, 10-34059]<br><br>**MEMORANDUM OF DECISION RE: BAC HOME LOANS SERVICING, L.P.'S MOTIONS TO QUASH SUBPOENAS**<br><br>Date: January 19, 2011<br>Time: 2:00 p.m.<br>Location: Courtroom 302 |

In recent months, the United States Trustee ("UST") has begun a nationwide review of bankruptcy filings by mortgage servicers, including BAC Home Loans Servicing LP ("BAC"). As part of its review, the UST[1] sought discovery from BAC regarding its proofs of claim in the above-referenced bankruptcy cases currently pending in the United States Bankruptcy Court for the District of New Jersey. To that end, the UST sought to examine a BAC representative about the preparation of BAC's proofs of claim and to produce various documents in connection with that process.

---

[1] Roberta A. DeAngelis, United States Trustee for Region 3 in Newark, New Jersey.

- 1 -

Each of the cases is substantially similar, such that only a single comprehensive discussion is necessary. Each involves individual debtor(s) with home mortgages serviced by BAC.[2] In each of the cases, BAC has filed a proof of claim, signed by its attorney of record, and listing arrearages (or riders) consisting of various charges, including "escrow shortages, property inspection fees, previous bankruptcy fees, attorney's foreclosure fees, attorney's foreclosure costs, and post-petition pre-confirmation attorney's fees." The proofs of claim did not contain certain details, such as the dates on which these alleged charges were incurred.

A. The UST's Subpoena:

The UST has issued a subpoena *duces tecum* and *ad testificandum* to BAC, requesting that the latter produce a corporate representative to appear at a 2004 examination at the UST office in Woodland Hills, California, and discuss the following:

a. The internal processes and procedures that BAC uses in ensuring that proofs of claim are prepared and filed on its behalf in the District of New Jersey;
b. The documents, records and information provided by BAC to its counsel[3] in each of the respective cases in order to allow them to prepare, verify, and file its proofs of claim;
c. The relationship between BAC and its counsel in each case;
d. The retention of BAC's counsel to provide services concerning or relating to the loan referenced in the proof of claim;
e. Certain documents produced in response to the subpoena.

In addition, the UST requested that BAC produce certain documents to its Newark, New Jersey office including, but not limited to, copies of the relevant notes and mortgages and any assignments and endorsements thereof, payment histories for the various debtors' loans with respect to the mortgages, correspondence referencing the debtors' loans, documentary evidence of BAC's payment of all amounts claimed due in the proofs of claim, documentary evidence that BAC is the servicer or holder of the notes and mortgages, and documents related to BAC's policies and procedures for verifying and filing proofs of claim.

In each of the cases, the UST served copies of the subpoena on each of the debtors, their attorneys, and the Chapter 13 Trustee. BAC, has filed an opposition to the subpoenas and the 2004 examination.

---

[2] Some of the BAC mortgages were junior mortgages as to which the debtors obtained a "lien strip."
[3] BAC retained separate counsel for each case, including "Frankel Lambert," "Fein, Such, Kahn & Shepard PC," and "Prober & Raphael."

B. BAC's Motion to Quash:

On December 22, 2010, BAC filed six separate motions to quash the subpoenas in this Court. BAC argues that the subpoenas should be quashed because: (1) the subpoenas are procedurally improper for a number of reasons, including: (a) the UST has failed to show "good cause" for a 2004 examination; (b) the UST failed to secure an order authorizing a 2004 examination; (c) the time and location designated in the subpoenas for the examinations and document production are improper, inconvenient, and unduly burdensome under Federal Rules of Bankruptcy Procedure 2004 and 9016; and (d) the UST failed to obtain the release required by the Right to Financial Privacy Act of 1978, 12 U.S.C. §§ 3401, et seq. ("RFPA"); and (2) the UST lacks standing under 11 U.S.C. § 307 and 28 U.S.C. § 586 to obtain a 2004 examination. In addition, BAC objects to the requests for individual documents on specific grounds, such as vagueness, overbreadth, confidentiality, and privileges.

### DISCUSSION

A. UST's Standing to Issue the Subpoenas:

Rule 2004 of the Federal Rules of Bankruptcy Procedure provides that a motion for the examination of any entity may be brought by "any party in interest." Fed. R. Bankr. P. 2004(a). The term "party in interest" is not defined in the Bankruptcy Code.

The UST is an official of the United States Department of Justice charged with responsibility to "supervise the administration of cases and trustees in cases under chapter 7, 11, 12, 13 or 15 of title 11 . . . ." 28 U.S.C. § 586(a)(3). Generally, the UST has standing to "raise[,] . . .appear and be heard <u>on any issue in any case or proceeding</u>" under the Bankruptcy Code, but may not file a plan. 11 U.S.C. § 307 (emphasis added). BAC argues that, in spite of section 307's broad language, the UST is not a "party in interest" with authority to request 2004 examinations. BAC argues that the UST's powers and duties are enumerated in 28 U.S.C. § 586(a) and in specific sections within the Bankruptcy Code,[4] and points to the different treatment and separate references provided to the United States Trustee and "party in interest." Essentially, BAC argues that section 586 and the numerous sections in which the UST's specific powers and duties are mentioned operate as a "ceiling" of the

---

[4] See, e.g., 11 U.S.C. §§ 110(j); 111; 303(g); 327(c); 330(a); 707; 727; 1102; 1104; 1112(e), etc.

UST's power to act in bankruptcy proceedings, with section 307 serving as an "enabling provision" to grant the UST the standing necessary to perform those duties.

BAC's argument fails. As a preliminary matter, it should be noted that several courts encountering this precise issue have already held that the UST **does** have standing to seek 2004 examinations. See, e.g., In re Countrywide Home Loans, Inc., 384 B.R. 373, 385 n.12, 391 (Bankr. W.D. Pa. 2008); Dean v. McDow, 299 B.R. 133, 135 (E.D. Va. 2003); Gache v. Balaber-Strauss, 198 B.R. 662, 663 (S.D.N.Y. 1996). The court in In re Countrywide read section 307 as ensuring "that the UST has the ability to act in areas where Congress did not specifically foresee and provide an explicit provision for the UST to do so." 384 B.R. at 386. The court concluded that sections 586 and 307 could be "harmonized" such that one does not render the other superfluous. Id. at 385-86; see also TRW Inc. v. Andrews, 534 U.S. 19, 31 (2001) ("It is 'a cardinal principle of statutory construction' that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'").

Section 307 is written in extremely broad language: it allows the UST to raise, appear, and be heard on any issue in any bankruptcy case or proceeding. Under the plain meaning of the statute, this includes the ability to seek and conduct Rule 2004 examinations. Section 307—**not** section 586 and the enumerated provisions in the Code to which BAC refers—is the "ceiling" of the UST's powers and duties. Those provisions serve to shed light on how Congress intended the UST to exercise the broad powers conferred upon it by section 307. See Countrywide, 384 B.R. at 386.

The legislative history of section 307—to which BAC itself cites—supports the conclusion that the UST has standing to seek and obtain a 2004 examination:

> The U.S. Trustee is given standing to raise, appear, and be heard on any issue or any case or proceeding under title 11, U.S. Code--except that the U.S. Trustee may not file a plan in a chapter 11 case. In this manner, the U.S. Trustee is given the same right to be heard <u>as a party in interest</u>, but retains the discretion to decide when a matter of concern to the proper administration of the bankruptcy laws should be raised. By not designating the U.S. Trustee as a party in interest, the legislation ensures that there is no confusion over the U.S. Trustee's role in a case. A party in interest normally has a pecuniary interest in a case; the U.S. Trustee has no pecuniary interest in any case, and functions only as an impartial administrator.

H. Rep. No. 99-764, at 27 (1986), *reprinted in*, 1986 U.S.C.C.A.N. 5227, 5240 (emphasis added). The legislative history thus makes it clear that the UST is not a party in interest, yet has standing to participate in a bankruptcy

case to a similar extent as a party in interest. An example of this can be found in section 1112, which governs conversion or dismissal of chapter 11 cases. See generally 11 U.S.C. § 1112. Section 1112(b) provides that a "party in interest" can move for conversion or dismissal of a chapter 11 case, with no specific reference to the UST. Section 586(a)(8), however, provides that the UST may seek conversion or dismissal "in any case in which the United States trustee finds material grounds for any relief under section 1112 of title 11 . . . ." 28 U.S.C. § 586(a)(8). Clearly, the UST can be accorded "party in interest" standing without being called a "party in interest."

When applied in the context of the UST's "watchdog" role in the administration of bankruptcy cases, this makes perfect sense. See H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 1, 88 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6049 ("[USTs] . . . will serve as bankruptcy watch-dogs to prevent fraud, dishonesty, and overreaching in the bankruptcy arena."). While the UST does not have a pecuniary interest in a case and therefore lacks the usual incentive of a "party in interest" to conduct Rule 2004 examinations, section 307's broad language nonetheless serves to ensure that the UST possesses the flexibility necessary to carry out its "watchdog" responsibilities in bankruptcy cases, including the ability to conduct 2004 examinations in an effort to prevent abuse.

To the extent that Countrywide reads section 307, Rule 2004, and the applicable case law as conferring upon the UST the power and ability to seek 2004 examinations, the Court adopts its reasoning. It would make no sense to confer investigative powers on the UST and give them the same rights as a party in interest and not to afford rights to utilize Rule 2004 examinations. BAC's reading of section 307 would render it superfluous. The nature of this inquiry is precisely the type of issue where the UST, as both impartial administrator and "watchdog" of bankruptcy administration, should be afforded investigative powers. The fees and costs included in the secured lenders' claims have been an area of great contention between debtors and those secured lenders for some time. An individual debtor facing foreclosure is unlikely to have the ability or the resources to seek discovery of this complicated area, yet similar issues are raised in multiple cases. At the same time, the UST is an independent party and can evaluate any information it receives without a pecuniary interest in the claims objection process.

In addition, BAC's argument that the "Court should not accept the UST's invitation to expand [UST's] authority without check" is without merit and is rejected. There are safeguards—including Rule 9011 and the limitations contained in Rule 2004—that serve to ensure that the UST utilizes its discretion in a limited and responsible fashion. As many 2004 examinations cause the UST or parties to conclude further action is <u>not</u> warranted, denying access to this tool could actually result in a less informed use of the UST's oversight powers.

Accordingly, the UST has standing in all six of the instant cases to seek 2004 examinations of BAC representatives.

### B. The Subpoenas' Alleged Procedural Defects:

*1. Good Cause:*

BAC argues that UST's subpoenas should be quashed because they are procedurally improper. One of the procedural defects that BAC alleges is the UST's lack of "good cause." Rule 2004 is the basic discovery device in bankruptcy cases, which allows for the examination of any entity regarding "acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate." Fed. R. Bankr. P. 2004(b). The scope of a 2004 examination is "unfettered and broad" and is akin to a "fishing expedition. In re GHR Energy Corp., 33 B.R. 451, 453-54 (Bankr. D. Mass. 1983).

When a party seeks to conduct a 2004 examination, and the party to be examined objects, the former must show that it has "good cause" to conduct the examination. In re W&S Investments, Inc., 985 F.2d 577, 1993 WL 18272, at *2 (9th Cir. Jan. 28, 1993) (citing In re Wilcher, 56 B.R. 428, 434 (Bankr. N.D. Ill. 1985)). "Generally, good cause is shown if the [Rule 2004] examination is necessary to establish the claim of the party seeking the examination, or if denial of such request would cause the examiner undue hardship or injustice." In re Metiom, Inc., 318 B.R. 263, 268 (S.D.N.Y 2004) (quoting In re Dinubilo, 177 B.R. 932, 943 (E.D. Cal. 1993)). Once the examiner establishes the existence of "good cause," the burden shifts back to the objecting party to show that examination would be oppressive or burdensome. Wilcher, 56 B.R. at 434 (citing Freeman v. Seligson, 405 F.2d 1326, 1337 (D.C. Cir. 1968)).

The UST has properly established that she has good cause for requesting the 2004 examinations of BAC representatives. The subject matter of the examinations—the basis for the validity of BAC's various proofs of claim—is pretty clearly related to the debtors' liabilities and the amounts to be paid under their chapter 13 plans. The UST has more than mere "curiosity" about potential abuse. Rather, the UST's concerns stem from a foundation suggesting the possible existence of abuse in the proof of claim process.[5] BAC's argument—that some of the undocumented charges about which the UST seeks to inquire are "de minimis"—fails to acknowledge that such charges may potentially be part of a systemic problem.[6] Where complaints are made about common abuses in bankruptcy cases that are not unique to the facts and issues of just or two cases, the UST has cause to inquire further to determine if there any basis for the complaints received. The UST correctly points out that her "watchdog" role in bankruptcy cases not only justifies allowing the UST to conduct these examinations, but also mandates it.

While the UST is not a mortgage regulator, the UST is empowered to monitor and investigate issues relating to the filing of proofs of claim in bankruptcy cases. The UST is not seeking to regulate any mortgage or banking issues outside of the bankruptcy context.

BAC argues that it is the debtors' responsibility to examine proofs of claim in their individual cases. Relying on consumer debtors—many of whom are struggling to make their plan payments—to expend extra hard-to-come-by funds to litigate the propriety of what BAC terms "de minimis" charges reveals the disingenuousness of BAC's argument. This argument also ignores the fact that the UST is the only party able to address and investigate concerns about nationwide systemic abuse. The UST's fundamental duty—to help safeguard the integrity of the bankruptcy process—coupled with allegations of nationwide abuse in the proof of claim process, establishes the existence of "good cause" to conduct the Rule 2004 examinations.

//

//

---

[5] See Campbell v. Countrywide Home Loans, Inc., 545 F.3d 348 (5th Cir. 2008) (examining Countrywide's proof of claim process with respect to pre-petition escrow payments); In re Rodriguez, -- F.3d --, 2010 WL 5191428 (3d Cir. Dec. 23, 2010) (same).

[6] BAC also argues that, because the fees and charges relate to junior mortgages to be "stripped" pursuant to the debtors' chapter 13 plans, these fees are insignificant and would likely be discharged anyway. However, BAC ignores the fact that the "lien stripping" is not complete until the court makes a valuation determination. The fees may also be paid in part if unsecured debt is being paid pursuant to the plan. In this sense, the fees remain relevant.

*2. Failure to Secure an Order Authorizing a 2004 Examination:*

BAC argues that the UST failed to file a motion under Rule 2004 and to secure an order authorizing a 2004 examination. While it is true that an examination under Rule 2004 is initiated by motion, some courts' local rules often alter this procedure. See 9 Lawrence P. King, COLLIER ON BANKRUPTCY ¶ 2004.01[4]. Here, the local bankruptcy rules for the District of New Jersey apply to the UST's request for a 2004 examination. The relevant rule provides that, "[a]ny party in interest seeking to compel an examination or production of documents shall serve a subpoena pursuant to Fed. R. Bankr. P. 2004(c) without filing a motion or obtaining an order authorizing such examination or document production." D.N.J. LBR 2004-1(b). The UST's service of the subpoena was sufficient and no motion was required. In any event, BAC has had the opportunity to be heard and oppose the 2004 examination and the issuance of the subpoena by virtue of its motions to quash. In essence, BAC wants—and has obtained—judicial review of the subpoena prior to its compliance.

*3. Time and Location of the Examination as "Unduly Burdensome":*

BAC objects to the subpoena on the grounds that the time and location of the examination and document production are inconvenient and unduly burdensome. A search of the California Secretary of State website reveals that BAC is headquartered in Calabasas, California, only several miles from the UST's office in Woodland Hills, California. Furthermore, BAC has not shown why any <u>one particular</u> subpoena is unduly burdensome. While it may be true that the UST's national effort may be keeping BAC busy, this does not, by itself, make every subpoena issued by the UST an undue burden on BAC. The UST has indicated that she is working with BAC representatives to reduce any burden, and BAC has cited no specific problem other than a generalized burden.

*4. UST's Compliance with the Right to Financial Privacy Act ("RFPA"):*

BAC states, without being specific, that the UST has failed to obtain the release required by the RFPA, 12 U.S.C. §§ 3401 *et seq.* The UST has filed a certificate of compliance with the RFPA in each of the relevant cases. The only evidence before the Court is the record that RFPA releases were obtained. BAC's conclusory objection that the UST has failed to comply with the RFPA is overruled.

C. BAC's Individual Objections to the Document Requests:

Each of BAC's six individual motions to quash raised the same objections to the same requests for production of documents as well as topics for individual examination. The first of BAC's objections is that the UST's requests are "vague and ambiguous" because they do not specify a document format. The definitions clause in the subpoenas clearly provides that "documents" encompass any format appearing in that definition (e.g. writings, electronic transmission, email, etc.).

BAC also objects to the requests on the grounds that they call for information protected by the attorney-client and/or work product privileges. However, as the UST correctly points out, the subpoenas' instructions clearly provide that BAC is not to produce any privileged documents, but to create a "privilege log" instead. This is the usual and customary practice and prevents the disclosure of any privileged communications. Moreover, to the extent that BAC regards certain documents as "confidential" and "trade secrets," it is free to seek a protective order.

BAC objects to nearly all of the UST's requests for production of documents as "overly broad and unduly burdensome." That conclusory statement, without an elaboration, is insufficient to defeat the UST's request for discovery. See, e.g., Walker v. Lakewood Condominium Owners Ass'n, 186 F.R.D. 584, 587 (C.D. Cal. 1999) ("Boilerplate, generalized objections are inadequate and tantamount to not making any objection at all."). Should BAC feel it necessary to elaborate on its objection and provide a more detailed reason for it, it can move for a protective order. Otherwise, all of these boilerplate objections border on the frivolous and are a waste of this Court's limited resources. Furthermore, the Court finds it curious that BAC regards as "burdensome" the production of documents relating to individual loans when those documents are supposed to be reviewed by BAC before it files its proofs of claim.

BAC objects to nearly all of the UST's requests for production of documents on the grounds that "there is no pending objection to claim or other contested matter upon which [each request] is grounded, accordingly, [each request] is neither relevant to a contested issue in [each relevant case] nor reasonably calculated to lead to the discovery of admissible evidence." BAC's implication that a contested matter is required prior to the issuance of the subpoena under Rule 2004 is clearly incorrect. See Dinubilo, 177 B.R. at 941 ("... a Rule 2004 examination

Main Document    Page 10 of 11

is normally employed at the pre-litigation stage of a bankruptcy case. Once a contested matter is pending, discovery requests are granted under Rule 9014 . . ."); COLLIER ON BANKRUPTCY ¶ 2004.01[1]. The 2004 examination procedure clearly contemplates the absence of litigation. This has been accentuated as a result of the Supreme Court's decisions in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) and Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009), because any complaint that might be filed would be required to contain specific allegations potentially only discoverable through 2004 examinations.[7] In addition, to the extent that BAC objects on relevancy grounds, this argument can be rejected because discovery under a 2004 examination need not be measured by the standards of ordinary discovery mechanisms.

## CONCLUSION

For the foregoing reasons, each of BAC's six motions to quash is DENIED and its objections are overruled. The UST should lodge orders in accordance with this Memorandum.

DATED: January 28, 2011

*Maureen Tighe*

MAUREEN A. TIGHE
UNITED STATES BANKRUPTCY JUDGE

---

[7] See Robert J. Keach et al., *Rule 2004 as a Pre-Litigation Tool in a Post-Twombly/Iqbal World: Part I*, ABI JOURNAL, Oct. 2010, at 28.

**NOTE TO USERS OF THIS FORM**:
1) Attach this form to the last page of a proposed Order or Judgment. Do not file as a separate document.
2) The title of the judgment or order and all service information must be filled in by the party lodging the order.
3) **Category I.** below: The United States trustee and case trustee (if any) will always be in this category.
4) **Category II.** below: List ONLY addresses for debtor (and attorney), movant (or attorney) and person/entity (or attorney) who filed an opposition to the requested relief. DO NOT list an address if person/entity is listed in category I.

# NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that a judgment or order entitled (*specify*) **MEMORANDUM OF DECISION RE: BAC HOME LOANS SERVICING, L.P.'S MOTIONS TO QUASH SUBPOENAS** was entered on the date indicated as "Entered" on the first page of this judgment or order and will be served in the manner indicated below:

**I. SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s), the foregoing document was served on the following person(s) by the court via NEF and hyperlink to the judgment or order. As of January 28, 2011, the following person(s) are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email address(es) indicated below.

- Jennifer L Braun    jennifer.l.braun@usdoj.gov
- Nina Huerta    nhuerta@lockelord.com
- S Margaux Ross    margaux.ross@usdoj.gov
- United States Trustee (SV)    ustpregion16.wh.ecf@usdoj.gov

☐ Service information continued on attached page

**II. SERVED BY THE COURT VIA U.S. MAIL:** A copy of this notice and a true copy of this judgment or order was sent by U.S. Mail to the following person(s) and/or entity(ies) at the address(es) indicated below:

☐ Service information continued on attached page

**III. TO BE SERVED BY THE LODGING PARTY:** Within 72 hours after receipt of a copy of this judgment or order which bears an "Entered" stamp, the party lodging the judgment or order will serve a complete copy bearing an "Entered" stamp by U.S. Mail, overnight mail, facsimile transmission or email and file a proof of service of the entered order on the following person(s) and/or entity(ies) at the address(es), facsimile transmission number(s) and/or email address(es) indicated below:

☐ Service information continued on attached page